UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PETER ANTHONY GRANDPRE, JR.**       **CIVIL ACTION**

**VERSUS**      **NO. 17-8935-DEK**

**SHERIFF MARLIN N. GUSMAN, ET AL.**

## ORDER AND REASONS

Plaintiff, Peter Anthony Grandpre, Jr., a state inmate, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Sheriff Marlin N. Gusman, Warden Chaz Ruiz, Lieutenant Henry, and Deputy B. Savage. In this lawsuit, plaintiff claims that excessive force was used against him and that he was denied immediate medical attention after the incident. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).[1]

The defendants have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] Plaintiff has opposed the motions.[3]

---

[1] Rec. Doc. 12.
[2] Rec. Docs. 25 and 26.
[3] Rec. Doc. 32. In his opposition, plaintiff states that "[t]he court should deny the defendants['] motion because Plaintiff ha[s] not had an opportunity to complete discovery and defendants have not yet complied with plaintiff['s] discovery request." Rec. Doc. 32. Because plaintiff is proceeding *pro se*, the Court will liberally construe that statement as a request for a continuance of the summary judgment motions. However, as the United States Fifth Circuit Court of Appeals has explained:

> To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. The nonmoving party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts. If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment.

Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993) (citations and quotation marks omitted). Here, despite repeated requests from the defendants asking that plaintiff forward them his discovery requests, no such discovery requests were ever received by the defendants. See Rec. Doc. 31. Further, there is no reason to believe that discovery would produce evidence creating a genuine issue of material fact. On the contrary, *the defendants do not*

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

---

*dispute plaintiff's factual allegations as to what transpired in this case.* Rather, they simply argue that those allegations, even if true, fail to state a constitutional violation. For the reasons explained herein, the defendants are correct. Therefore, the request for a continuance of the motions for summary judgment in order to obtain further discovery is **DENIED**.

In this lawsuit, plaintiff makes the following allegations:

On September 8, 2016, plaintiff was confined on Pod F-1 at the Orleans Justice Center. At 9:00 p.m., Captain Ross, Deputy Savage, and another unidentified deputy entered the pod. Savage approached plaintiff and asked why he was not returning to his cell for lockdown. Plaintiff replied that he had spoken to Deputy Zanders, who was aware that plaintiff had just been notified of a death in his family. Savage responded with an obscenity, instructed plaintiff to return to his cell, and tried to grab him. Plaintiff backed away, telling Savage that no use of force was necessary. Plaintiff then moved his hand away as Savage attempted to apply handcuffs. At that point, the unidentified deputy approached and identified himself as a ranking officer. As that officer and plaintiff were speaking, Savage again tried to grab plaintiff. Plaintiff responded by pointing his finger at Savage and telling him not to touch him. Savage then again tried to grab plaintiff, who extended his hand to keep to keep Savage at a distance. Savage then sprayed plaintiff with a burst chemical spray. Telling Savage that he should not have used the spray, plaintiff retreated, whereupon Savage sprayed him with two more bursts of chemical spray.

After plaintiff unsuccessfully tried to wash the spray off of his face at the cell sink, he requested medical attention. The unidentified deputy then handcuffed plaintiff to escort him to the medical unit; however, as they were leaving the pod, Lt. Henry stopped them. Saying that plaintiff could not go to the medical unit, Henry instead returned plaintiff to his cell. Once he was locked in his cell, with his hands still cuffed and his face burning from the spray, plaintiff began to have a panic attack and was unable to catch his breath. After five or ten minutes, two unidentified deputies then escorted him to the medical department. He was later returned to his cell without a shower to remove the spray residue.

In their motion for summary judgment, the defendants do not dispute the foregoing allegations. Rather, they simply argue that the allegations, even if true, fail to rise to the level of constitutional violations.

Before addressing the merits of plaintiff's underlying claims, the Court first notes that, for the following reasons, plaintiff's allegations are insufficient to state a claim against Sheriff Gusman and Warden Ruiz in either their official or individual capacities.

If Gusman and Ruiz are being sued in their official capacities, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, any official-capacities claims against Gusman and Ruiz would in reality be claims against the local governmental body itself. Maize v. Correct Health Jefferson, L.L.C., Civ. Action No. 13-5925, 2013 WL 6490549, at *2 (E.D. La. Dec. 10, 2013); see also Picard v. Gusman, Civ. Action No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), adopted, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, *a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.* To satisfy the cause in fact requirement, *a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.* The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Accordingly, he has failed to state a proper official-capacity claim against Gusman or Ruiz.

On the other hand, if Gusman and Ruiz are being sued in their individual capacities, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In the instant case, the complaint includes no allegations whatsoever against either Gusman or Ruiz. Where, as here, a plaintiff merely lists an individual as a defendant but makes no factual allegations against him, no cognizable claim has been stated against that defendant. See, e.g., Hall v. Peck, Civ. Action No. 16-13527, 2017 WL 745729, at *2 (E.D. La. Jan. 12, 2017), adopted, 2017 WL 788354 (E.D. La. Feb. 23, 2017); Reavis v. State of Louisiana, Civ. Action No. 16-1692, 2016 WL 3571440, at *3 (E.D. La. June 8, 2016), adopted, 2016 WL 3524139 (E.D. La.

5

June 28, 2016); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617, at *2 (E.D. La. Nov. 12, 2014). Accordingly, plaintiff has likewise failed to state a proper individual-capacity claim against Gusman or Ruiz.

In any event, even if plaintiff were able to correct those pleading defects, it still would not ultimately aid him. For the following reasons, none of the defendants named in this lawsuit can be found liable because, for the following reasons, there was no underlying constitutional violation.

Plaintiff's primary claim is that Deputy Savage's use of chemical spray constituted excessive force. Because plaintiff was a pretrial detainee at the time of the incident,[4] his excessive force claim "lies under the Fourteenth Amendment." Benoit v. Bordelon, 596 Fed. App'x 264, 267 n.2 (5th Cir. 2015).

In this Circuit, it had long been the rule that excessive force claims brought pursuant to the Fourteenth Amendment by pretrial detainees were to be considered using the same analysis as employed when considering excessive force claims brought pursuant to the Eighth Amendment by convicted prisoners. Valencia v. Wiggins, 981 F.2d 1440, 1446-47 (5th Cir. 1993). Under that analysis, courts were to employ the *subjective* standard announced in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992), which looked to "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Valencia, 981 F.2d at 1446 (internal quotation marks omitted); accord Kitchen v. Dallas County, Texas, 759 F.3d 468, 477 (5th Cir. 2014). As part of that analysis, courts were to consider the following factors:

    1. the extent of the injury suffered;

---
[4] The incident occurred on September 8, 2016, and plaintiff was not convicted until November 14, 2016. See Rec. Doc. 3, pp. 3-4.

2. the need for the application of force;

3. the relationship between the need and the amount of force used;

4. the threat reasonably perceived by the responsible officials; and

5. any efforts made to temper the severity of a forceful response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

However, in 2015, the United States Supreme Court clarified the law concerning excessive force claims brought pursuant to the Fourteenth Amendment. With respect to such a claim, the Supreme Court held that a pretrial detainee need show only that the use of force was "*objectively unreasonable.*" Kingsley v. Hendrickson, 135 S. Ct. 2466, 2470 (2015). In doing so, the Supreme Court expressly rejected the *subjective* standard of Whitley and Hudson, holding that those cases are relevant to a Fourteenth Amendment excessive force claim "only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails." Id. at 2475.

Although the United States Fifth Circuit Court of Appeals has not yet considered the ultimate impact of Kingsley on this Circuit's precedents, one thing is clear: the foregoing Hudson factors still play a role in a court's analysis of a Fourteenth Amendment excessive force claim. That is apparent from the fact that the Kingsley court referenced similar factors to be considered in resolving the *objective* reasonableness of an action on which a Fourteenth Amendment claim is based:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be

exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

Kingsley, 135 S. Ct. at 2473 (citation omitted).

Therefore:

In answering th[e] question [of whether an officer's use of force was excessive in relation to a legitimate, nonpunitive governmental purpose], the Court turns to the Hudson inquiry, which has been used for nearly twenty-five years to determine whether a corrections officer's use of force was "wanton and unnecessary," that is, whether force was excessive. Hudson, 503 U.S. at 7, 112 S.Ct. 995. However, in a departure from the pre-Kingsley jurisprudence, the Court need only ask whether the force was unnecessary – not whether the use of force was so unnecessary as to show the requisite state of mind to support an Eighth Amendment excessive force claim.

Thompson v. Beasley, 309 F.R.D. 236, 247 (N.D. Miss. 2015); accord Luke v. Beagron, Civ. Action No. 16-13461, 2017 WL 5186768, at *3 (E.D. La. Nov. 9, 2017).

For the reasons explained below, it is clear that the defendants are entitled to summary judgment on plaintiff's excessive force claim when the Hudson factors are properly weighed.

**1. The extent of the injury suffered.** In considering the extent of a plaintiff's injury with respect to an excessive force claim, a court must be mindful that "there is no categorical requirement that the physical injury be significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). However, "[a]lthough, [a plaintiff] need not show a significant injury, he must have suffered at least *some* injury." Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (emphasis added). Here, plaintiff has not alleged that he suffered any injury other than brief pain from the chemical spray. It is clear that "[s]hort-term pain alone is insufficient to constitute more than *de minimis* injury for purposes of an excessive force claim." Martinez v. Nueces County, Texas, Civ. Action No. 2:13-CV-178, 2015 WL 65200, at *11 (S.D. Tex. Jan. 5, 2015), aff'd sub nom. Martinez v. Day, 639 Fed. App'x 278 (5th Cir. 2016); accord Bradshaw v. Unknown Lieutenant, No. 02-10072, 2002 WL 31017404 (5th Cir. Aug. 21, 2002)

(finding that inmate's "burning eyes and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritation of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace" was nothing more than a "*de minimis* injury"). Accordingly, the Court finds that plaintiff's injuries, if any, were minor and, therefore, this first factor weighs against him.

**2. The need for the application of force.** A jail guard is permitted to use force in a variety of situations. For example, a guard clearly may use force when necessary to control a "recalcitrant inmate." See, e.g., Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). As the United States Seventh Circuit Court of Appeals explained in an excessive force case:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, *such as a chemical agent* or physical force. While experts who testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.
> Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. *Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.* Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline.

Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1980) (emphasis added); accord Censke v. Ekdahl, No. 2:08-cv-283, 2009 WL 1393320, at *5 (W.D. Mich. May 18, 2009). Therefore, the Court concludes that, in light of plaintiff's continued disobedience in refusing to comply with Savage's

9

order that he return to his cell, some application of force was necessary and appropriate to restore discipline. Accordingly, the Court finds that this second factor likewise weighs against plaintiff.

**3. The relationship between the need and the amount of force used.** Based on the foregoing finding that some amount of force was necessary to restore discipline in this case, the next question is whether the amount of force used bore a reasonable relationship to the need. It did. Rather than engaging in forceful physical contact, Savage used chemical spray to gain compliance. It is clear that a limited application of chemical spray "to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)); accord Censke v. Ekdahl, No. 2:08-cv-283, 2009 WL 1393320, at *6 (W.D. Mich. May 18, 2009) ("The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force."); Ash v. Global Expertise in Outsourcing, Inc., Civ. Action No. 06-1854, 2007 WL 988923, at *1 (W.D. La. Feb. 14, 2007) ("The use of a chemical agent is a reasonable alternative to a physical confrontation between an inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order.") (adopted by Minaldi, J., on April 2, 2007). Here, plaintiff admits that he refused to comply with Savage's order to lockdown, resisted Savage's attempt to apply handcuffs, evaded Savage's attempts to grab him, pointed his finger at Savage and told him not to touch him, and extended his hand to keep Savage at a distance. Plaintiff does not suggest, and, in light of such continued resistance, this Court cannot imagine, what lesser type of force would have been effective here. For these reasons, the Court finds that this third factor also weighs against plaintiff.

**4. The threat reasonably perceived by the responsible officials.** This factor is at best neutral for plaintiff and perhaps weighs slightly against him. It is true that there is no competent

summary judgment evidence, such an affidavit from Savage, detailing what threat, if any, he actually perceived. However, even if Savage did not believe that plaintiff posed any imminent physical danger, that is not the only type of threat which must be considered. Plaintiff was on a pod occupied by other inmates. Those inmates could have been emboldened to likewise misbehave had plaintiff been allowed to engage in continuous disrespectful behavior without adverse consequence. While a single inmate's flagrant disobedience might pose no immediate threat, it obviously can serve as a catalyst for more widespread misbehavior which could quickly escalate out of control and pose a serious security concern. Moreover, it must be remembered that prison officials often are required "to act quickly and decisively" and, therefore, their judgments on such matters "are entitled to wide-ranging deference." Baldwin v. Stalder, 137 F.3d 836, 840 (5th Cir. 1998) (quotation marks omitted).

**5. Any efforts made to temper the severity of a forceful response.** It is undisputed that, prior to the spraying of the chemical agent, Savage gave plaintiff verbal orders to lockdown. "The issuance of verbal orders constitutes an effort made to temper the severity of a forceful response." Thompson v. Beasley, 309 F.R.D. 236, 249 (N.D. Miss. 2015). Moreover, as noted in the foregoing discussion of the third Hudson factor, the use of a chemical agent (as opposed to physical force) is in and of itself a means of tempering the forcefulness of a response. Lastly, the Court notes that plaintiff was taken to the medical unit after he was sprayed. Providing medical attention after the administration of a chemical spray is likewise recognized as a means to temper the severity of the force used. See Martin v. Seal, 510 Fed. App'x 309, 313 (5th Cir. 2013). Therefore, this factor weighs against plaintiff.

In summary, the Court finds that none of the Hudson factors weigh against the defendants and, as a result, plaintiff cannot show that Savage's use of the chemical spray was "objectively

unreasonable." Therefore, judgment of a matter of law is warranted with respect to plaintiff's excessive force claim.

Plaintiff also appears to contend that his rights were violated by Lieutenant Henry's order that plaintiff be returned to his cell rather than taken to the medical unit immediately after the spraying. Liberally construed, that contention is a claim that plaintiff's right to medical care was denied.

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's federal constitutional right to medical care is violated *only* if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Plaintiff cannot make either showing required.

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Here, the nurse's notes from plaintiff's visit to the medical unit shortly after the incident state that that although the skin on plaintiff's face was red and he was complaining of "discomfort to [his] face," "no other issues [were] noted." The notes also reflect that "[p]atient [was] allowed time to rinse [his] face thoroughly" and that he "verbalize[d] some relief." He was then returned to the pod and advised to notify the medical unit if he experienced any complications.[5] Such routine discomfort from exposure to chemical spray generally is not considered to constitute a "serious medical need" for constitutional purposes. See, e.g., McGuire

---

[5] Rec. Doc. 26-3.

v. Union County Jail, Civ. Action No. 4:13CV-P28-M, 2013 WL 4520282, at *6 (W.D. Ky. Aug. 26, 2013); Censke v. Ekdahl, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) ("In this case, Plaintiff merely complains of burning in his nose, lungs, eyes and skin. Such allegations do not constitute a serious medical need for purposes of the Eighth Amendment.").

Moreover, in order to prevail in this lawsuit, plaintiff must additionally be able to show that his serious medical needs were met with deliberate indifference. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, even if Henry initially ordered that plaintiff be returned to his cell after the spraying, that action at most resulted in only a brief delay in plaintiff receiving medical attention. Plaintiff acknowledges that he was in fact taken to the medical unit shortly thereafter, and his medical records show that he arrived in the medical unit at 9:30 p.m. – approximately thirty minutes after he was sprayed.[6] That brief delay did not constitute deliberate indifference. See, e.g., Jacoby v.

---
[6] Rec. Doc. 26-3.

Baldwin County, 596 Fed. App'x 757, 766-67 (11th Cir. 2014) (holding that an eight-hour delay in inmate's decontamination from pepper spray did not constitute deliberate indifference). Further, in any event, a delay in medical treatment rises to the level of an actionable constitutional violation only if the delay resulted in "substantial harm." Childers v. San Saba County, 714 Fed. App'x 384, 386 (5th Cir. 2018); Rhine v. Ellison, 537 Fed. App'x 410, 411 (5th Cir. 2013); Flores v. Jaramillo, 389 Fed. App'x 393, 395 (5th Cir. 2010); Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006). In the instant case, plaintiff does not allege in either his complaint or his opposition to the motions for summary judgment that he suffered any harm, much less substantial harm, from the thirty-minute delay.

Accordingly,

**IT IS ORDERED** that the defendants' motions for summary judgment, Rec. Docs. 25 and 26, are **GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this thirtieth day of July, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**